Opinion by
Head, J.,
In this action the plaintiff seeks to recover damages for injuries sustained while driving on the public highway, which injuries, she alleges, were caused by the negligence of the defendant who was operating his automobile on the same highway at the time of the accident. The testimony is very voluminous and conflicting at every point, and the appellant presents twenty-eight assignments of error for our consideration.
An examination, of the charge, in which the learned trial judge submitted to the jury the seriously contested questions of the defendant’s negligence and the plaintiff’s contributory *388 negligence, will clearly show, we think, that, if the court was right in submitting these questions at all, the manner of the submission was so favorable to the defendant as to leave him no ground for complaint on that score. To determine whether these were mixed questions of fact and law and, therefore, necessarily submitted to the jury, or whether they should have been regarded by the court and disposed of as simply questions of law, we must, of course, resort to the evidence. But in reviewing it, we exercise functions quite different from those of the jury. Their verdict has planted in this record, as established facts, the incidents and circumstances attending the accident, as narrated by the plaintiff and her witnesses. We must so regard them, notwithstanding the argument, so ably pressed upon us, that the plaintiff’s story, either by reason of untruthfulness, excitement or other cause, was improbable, not in harmony with certain fixed facts, and'strongly contradicted by a mass of forceful evidence given by the defendant and his witnesses.
Her version of the occurrence was briefly this: On a summer evening in 1904 she was driving along a public road. She had with her in the buggy another lady, Mrs. Wolfersberger, who, with herself, occupied the usual seat. A girl about nine years old sat upon a little improvised seat in front of and between the two ladies, and Mrs. Wolfersberger held, in her lap, a child about three years old. The horse was well broken, accustomed to the road, and had been driven by the plaintiff a number of times before. While passing through a little village, approaching a crossroad, less, perhaps, than 200 feet away, the defendant’s automobile, without any' warning from horn or gong, suddenly rounded the corner and came directly towards her. The horse showing some signs of fright, she put up her hand and called to them to stop. The machine was coming fast, “at high speed,” faster than the street cars from Palmyra to Lebanon, which make ten miles in forty minutes. They paid no attention to her signal, came right up the road until it was “ so close if the horse would not have jumped out of their way they would have run right over us.” Thus frightened, the horse got beyond control and ran away, partially wrecking *389 the buggy and injuring the plaintiff. The plaintiff not only testified herself, with great positiveness, to all of the facts thus stated, but Mrs. Wolfersberger, apparently a disinterested witness, does the same.
What disposition could be made of such testimony by the learned court below, other than submit it to a jury, we are unable to discover. If the jury accepted these witnesses as credible and their statements as true'the inference of the defendant’s negligence would naturally, if not necessarily, follow.
In the printed brief, presented by the appellant’s counsel, the numerous assignments of error are grouped around several propositions now to be considered. It is contended that even if the evidence would warrant the finding, that no warning of the defendant’s approach was given, the court should not have permitted the jury to consider that fact, because there was no evidence that it contributed to bring about the plaintiff’s injury. Some, at least, of the reasons why the legislature inserted in the statute an express and positive command to give such warning, under circumstances like those now before us, will at once occur to the ordinary mind. Had the plaintiff been thus warned a little more time would have been afforded her to prepare to meet the car. She might have gotten out of the buggy herself or caused the other occupants to do so and thus secured better control of her horse; she might have turned into a side street or alley to avoid the meeting, or she might have called someone to her aid. But from what source could we expect direct or positive testimony that the deprivation of any one or all of such opportunities contributed to cause the accident that followed? It is doubtless true, in every action like this one, that the jury must be able to find that an act of negligence, proven or admitted, contributed to cause the injury complained of, otherwise it would become an irrelevant fact; but their conclusion need not rest on the direct testimony of a witness who would undertake to assert such a thing as a matter of fact. It may exist as an inference justly deducible from all the facts in evidence, and such inferences may be considered by a jury with as much propriety as the facts out of which they arise. We think, therefore, *390 the refusal of the defendant’s first and second points was correct, while the general charge on the subject of the failure to give warning was more favorable to the defendant than he had a right to expect.
Several assignments complain of the action of the court in permitting the plaintiff and her chief witness to testify as to the speed at which the automobile was traveling, because, it is alleged, they were not qualified to give such testimony. They were not called as expert witnesses, nor did they attempt to give to the jury conclusions which could properly be drawn only from special knowledge they were not shown to possess. They were eyewitnesses of a fact and they but undertook to convey to the jury the picture, made on their minds at the time, of something transpiring before their eyes. The speed they saw they could rightfully undertake to describe in any one of the several ways adopted. The accuracy of their impressions as to the speed of the approaching car, their evidential value and the weight to be given to them, were matters for the jury under a proper submission. Again it is urged that even if the defendant drove his car at a rate of speed that was undue under the circumstances, there was no evidence that his negligence, in this respect, contributed to the plaintiff’s injury and, therefore, the court should have withdrawn that entire subject from the consideration of the jury. Again we answer, we do not find the argument convincing for the reasons adverted to in discussing the defendant’s failure to give warning of his approach before turning the corner.
The appellant also insists that “the plaintiff was guilty of contributory negligence, and the court should have so instructed' the jury and given binding instructions in favor of the defendant.” Manifestly, we think, the court could not have safely predicated such an instruction upon the mere fact that the plaintiff permitted another woman and two children to occupy the buggy with her in the manner described. The statement that “ she thus put herself in a position in which it was impossible for her to managé her horse,” may be freely made by counsel in argument before the tribunal invested with the right to determine, that in so driving on the highway, the *391 plaintiff went beyond the bounds of ordinary prudence and so aided in bringing about her own injury. But no court could make such a declaration, as a matter of law, and base thereon the conclusion that the plaintiff, by her own negligence, had lost her right to complain of the defendant’s want of care.
Objections were made, at the time of the trial, to certain remarles of plaintiff’s counsel in summing up to the jury, and the court was asked to withdraw a juror and continue the case. This request was refused and this refusal is assigned for error. Inasmuch as it is impossible to have the record reproduce the conditions attending the trial, or' to accurately measure the effect on the jury of the remarks complained of, the appellate courts have uniformly held that, in such cases, much must be left to the sound discretion of the trial judge. Ordinarily it is deemed sufficient if the trial judge, when alleged improper remarks of counsel are brought to his notice, declares their impropriety and plainly cautions the jury to give them no consideration. In an extreme case, where there is reason to fear that even such caution will,not undo the mischief, the court may and should withdraw a juror and continue the case.
The record shows that the learned trial judge carefully explained to the jury their duty in the matter, and warned them not to be influenced or affected in any way by the heated remarles or intemperate language of counsel on either side, indicating that there had been some violation of the strict rule on both sides. He did not consider the case such an extreme one as to warrant the withdrawal of a juror, and we cannot say his discretion was abused: Com. v. Windish, 176 Pa. 167; Com. v. Weber, 167 Pa. 153. “In a doubtful case we will assume that the jurors acted upon the admonition of the trial judge, to disregard the questionable remarks, rather than that they were improperly influenced by them:” Com. v. Striepeke, 32 Pa. Superior Ct. 82. If the plaintiff was entitled to recover at all, the verdict would not be regarded as excessive in amount, and where that is the case and the court has fairly cautioned the jury as to alleged improper remarks by counsel, this court will not réverse: Moore v. Neubert, 21 Pa. Superior Ct. 144.
*392 The questions we have considered cover most of the assignments and all that were most seriously pressed. As to the remaining ones it is only necessary to say that, after a careful examination of the entire record, we are all of opinion that it discloses no reversible error.
Judgment affirmed.