**CAN–TEX INDUSTRIES, a division of Harsco Corporation, Plaintiff,**

**v.**

**SAFECO INSURANCE COMPANY OF AMERICA, General Insurance Company of America, Defendants.**

Civ. A. No. 78–1004.

United States District Court,
W. D. Pennsylvania.

Nov. 8, 1978.

Clarence A. Crumrine, McCreight, Marriner & McCreight, Washington, Pa., for plaintiff.

Michael D. McDowell, Plowman & Spiegel, Pittsburgh, Pa., for defendants.

## OPINION

SNYDER, District Judge.

Sureties on a construction contract file a Motion for Partial Judgment On The Pleadings under Rule 12(c) Fed.R.Civ.P.[1] and seek a determination that finance charges and attorney's fees claimed by a creditor of the general contractor-principal are not recoverable under their bond. The bond was executed in accordance with the require- ment of the Public Works Contractors Bond Law of 1967, 8 P.S. § 191 *et seq.*, that the general contractor provide a payment bond for the protection of subcontractors on any public works project.

For the purposes of Defendants' Motion, we take as true all well pleaded

material allegations of the Complaint. *Art Metal Construction Co. v. Lehigh Structural Steel Co.*, 116 F.2d 57 (3rd Cir. 1940), *cert. denied* 316 U.S. 694, 62 S.Ct. 1296, 86 L.Ed. 1764 (1942). Conclusions of law, however, are not deemed admitted. *Rosenhan v. United States*, 131 F.2d 932 (10th Cir. 1942), *cert. denied* 318 U.S. 790, 63 S.Ct. 993, 87 L.Ed. 1156 (1943). Judgment on the pleadings may be granted only if on the facts so admitted, the moving party is clearly entitled to judgment. *Huntt v. Government of Virgin Islands*, 339 F.2d 309 (3rd Cir. 1964).

The Complaint alleges that:

1. The Ernest Renda Contracting Company, general contractor on a work site owned by the Carroll Township Authority, is indebted to Plaintiff in the amount of $79,263.63 for a quantity of vitrified clay pipe sold and delivered to the contractor at that site, pursuant to a contract between the parties.

2. The Renda Company is also indebted to the Plaintiff in the amount of $10,245.93, representing a finance charge of 1½% per month on the overdue account, as authorized by the subcontract.

3. The Renda Company is also indebted to the Plaintiff in the amount of $29,835.10 for attorney's fees, computed at 33⅓% of the balance due, also authorized by the subcontract.

4. The Plaintiff is entitled to recover the amount of $119,349.66 from the Surety, representing the balance, finance charges and attorney's fees as provided for in the subcontract.

The Defendants deny any obligation as to the fourth allegation as a matter of law.

The Public Works Contractors Bond Law of 1967 provides in pertinent part that:

"(a) Before any contract exceeding five thousand dollars ($5000) for the construc-

---

1. Rule 12(c) Fed.R.Civ.P. provides:

    "*Motion for Judgment on the Pleadings.* After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

tion, reconstruction, alteration or repair of any public building or other public work or public improvement, including highway work, of any contracting body is awarded to any prime contractor, such contractor shall furnish to the contracting body the following bonds, which shall become binding upon the awarding of said contract to such contractor:

\* \* \* \* \* \*

(2) A payment bond at one hundred percent of the contract amount. Such bond shall be solely for the protection of claimants supplying labor or materials to the prime contractor to whom the contract was awarded, or to any of his subcontractors, in the prosecution of the work provided for in such contract, and shall be conditioned for the prompt payment of all such material furnished or labor supplied or performed in the prosecution of the work. 'Labor or materials' shall include public utility services and reasonable rentals of equipment, but only for periods when the equipment rented is actually used at the site."

8 P.S. § 193.

The Payment Bond at issue here expressly provides, at Paragraph 5, that:

"[T]he terms and conditions of this Bond are and shall be that if the Principal and any subcontractor of the Principal to whom any portion of the work under the Contract shall be subcontracted, and if all assignees of the Principal and of any subcontractor, promptly shall pay or shall cause to be paid, in full, *all money which may be due any claimant supplying labor or materials in the prosecution and performance of the work in accordance with the Contract* and in accordance with the Contract Documents, including any amendment, extension or addition to the Contract and/or to the Contract Documents, for material furnished or labor supplied or labor performed, then this Bond shall be void; otherwise, this Bond shall be and shall remain in force and effect." [Emphasis added.]

Paragraph 6 of the Payment Bond states that:

"This Bond, as provided by the Act, shall be solely for the protection of claimants supplying labor or materials to the Principal or to any subcontractor of the Principal . . . The phrase 'labor or materials', when used herein and as required by the Act, shall include public utility services and reasonable rentals of equipment, but only for periods when the equipment rented is actually used at the site of the work covered by the Contract."

Plaintiff's Complaint alleges that the Defendants are indebted to the Plaintiff for the alleged sums "by reason of the aforesaid [Pennsylvania] statute (8 P.S. § 191 *et seq.*) and contractual relationships." We must look therefore to state decisions for interpretation of Pennsylvania law.

The Superior Court of Pennsylvania has recently had occasion to discuss the purposes of the Public Works Contractors Bond Act. *Valley Forge Industries, Inc. v. Armand Construction, Inc.,* 248 Pa.Super. 53, 374 A.2d 1312 (1977). That case involved the interpretation and application of the statute of limitations of the Act, and was transferred to the jurisdiction of the Commonwealth Court for reasons of state procedural law. Before the transfer, however, the Court commented on the Act, saying:

"First, it is designed to protect the contracting body by assuring faithful performance of the contract. Second, the law provides a substitute remedy for subcontractors who supply labor and materials and who are excluded from the protections afforded by the Mechanics' Lien Law of 1963."

*Id.* at 1315.

■ No state court has yet addressed itself to the scope of liability of the surety under the phrase "labor and materials" and the statute does not itself contain a definitional section. In light of the Superior Court's Opinion in *Valley Forge Industries,* however, this Court must conclude that the scope of the Public Works Contractors Bond Act is intended to be no greater than that

of the Mechanics Lien Law, since the purpose of the former Act is to place subcontractors in the same position with respect to defaulting contractors on a public works project that they would have enjoyed by virtue of a mechanic's lien on a private construction project.

The Pennsylvania Mechanics Lien Law, 49 P.S. § 1101 *et seq.,* provides that:

"Every improvement and the estate or title of the owner in the property shall be subject to a lien, to be perfected as herein provided, for the payment of all debts due by the owner to the contractor or by the contractor to any of his subcontractors for labor or materials furnished in the erection or construction, or the alteration or repair of the improvement, provided that the amount of the claim, other than amounts determined by apportionment under section 306(b) of this act, shall exceed five hundred dollars ($500)."

*Id.,* § 1301.

The statute then defines "labor and materials" to include:

"(7) 'Materials' means building materials and supplies of all kinds, and also includes fixtures, machinery and equipment reasonably necessary to and incorporated into the improvement.

\* \* \* \* \* \*

(9) 'Labor' includes the furnishing of skill or superintendence."

*Id.,* § 1201.

■ The parties have failed to cite, nor has the Court found, any cases extending the language "labor and materials" under either the Mechanics Lien Law or the Public Works Contractors Act to include finance charges or attorney's fees. Cases mentioned in Plaintiff's Brief deal only with the recovery of interest from the date of default. Plaintiff is, of course, entitled to interest on the judgment amount if it prevails on the merits, but we do not read these cases as suggesting that the surety on a payment bond should be liable for finance charges and attorney's fees, absent specific statutory requirement.

In *Lite-Air Products, Inc. v. Fidelity and Deposit Co. of Maryland,* 437 F.Supp. 801 (E.D.Pa.1977), a parallel case, Judge Newcomer held that the surety was not liable for lost profits, a cancellation charge, delayed damages, escalated material costs resulting from the delay, or finance charges under the 1967 Bond Law. On the question of liability for finance charges, he noted:

"[T]his claim must also be dismissed for not being a properly included item under 'labor and materials.' First this claim is not an indispensible cost for labor or materials which added value to the building project. Rather, the claim for finance charges is in the nature of a penalty, and therefore would more appropriately be classified as damages than as part of the value of the materials. In addition, there is no language in the bond from which the court could find that the parties intended the surety to be liable for this charge."

*Id.,* at 804.

■ It is of course true that a surety can be bound only to the extent and in the manner and under the circumstances set forth in his agreement. *See Peter J. Mascaro v. Milonas,* 401 Pa. 632, 166 A.2d 15 (1960); *Nazareth Foundry and Machine Co. v. Marshall Machinery and Supply,* 258 Pa. 558, 102 A. 268 (1917); *New Holland Dairies, Inc. v. Regent Dairy Products Corp.,* 115 Pa.Super. 87, 174 A. 664 (1934). The Bond in this case was executed in conformity with the requirements of state law and for the payment of all money "due any claimant" supplying labor and materials on a public works project. The Surety Bond could not be extended by language in a subcontract under which the general contractor agreed to be liable for finance charges and attorney's fees upon default. The law cannot impute an intent to cover such additions beyond the statutory requirements of the Payment Bond without express inclusion in the Bonding Agreement. No such language appears in the Agreement presently before this Court.

An appropriate Order will be entered.